ELIAS STEENERSON v. GREAT NORTHERN RAILWAY COMPANY.[1]

April 17, 1895.

No. 9324.

**Railroad and Warehouse Commission—Intervention.**

In proceedings, under the statutes of this state, before the railroad and warehouse commission, or, on appeal, in district court, to regulate and fix the rates, fees, charges, or classifications of a common carrier, another carrier, not a party to the proceeding, although indirectly affected by the de-

[1] Reported in 62 N. W. 826.

termination, cannot be permitted, as a matter of right, to intervene, to be made a formal party, and thus, in a measure, control the case.

**Same—Evidence of Reasonable Rate—Person Indirectly Interested.**
    The commission, and, on appeal, the court, should be liberal in receiving evidence upon the question of what is a reasonable rate or charge to be made by the carrier proceeded against, and in their discretion may receive evidence and hear arguments in behalf of any person or corporation specially, although indirectly, interested in the result.

Elias Steenerson, a resident of Polk county and a shipper of grain from Crookston, Fisher, and East Grand Forks to Minneapolis and Duluth, in behalf of himself and all others similarly situated in Polk, Marshall, and Kittson counties, in September, 1893, filed a complaint with the railroad and warehouse commission, in which he alleged that the rate charged by defendant railway company for transporting grain and the mill products thereof between Crookston and the terminal points of Minneapolis and Duluth was $16\frac{1}{2}$ cents per 100 pounds and between Fisher and East Grand Forks and said terminals was 17 cents per 100 pounds; that said rate was unreasonable and should be reduced; and asked for a reduction to 12 cents per 100 between Crookston and said terminals.

The Great Northern Railway Company having answered the complaint, the Northern Pacific Railroad Company, by its receivers, filed its petition with the commission asking leave to intervene and to be heard on the merits of the case. This petition was denied, a hearing was had on the merits of the case, and the commission made an order fixing a schedule of rates. From this order the Great Northern Railway Company and also the Northern Pacific Railroad Company, by its receivers, appealed to the district court for Ramsey county; and the Northern Pacific Railroad Company, by its receivers, filed in said court its petition of intervention, the material allegations of which are stated in the opinion. Upon a hearing of this petition before the district court, Kerr, J., made an order allowing the petitioner to intervene and ordering that its petition stand as an answer to the complaint. From an order overruling his demurrer to the petition in intervention, complainant Steenerson appealed. Reversed.

*H. W. Childs* and *Clapp & McCartney,* for appellant.

*Frank B. Kellogg, J. H. Mitchell, Jr.,* and *Tilden R. Selmes,* for respondent.

The subject-matter of this litigation is a public rate charged by a common carrier for doing an act which, under the decisions, is a public act; otherwise the legislature would have no power to regulate it, and the railroad and warehouse commission and this court would have no jurisdiction to hear this case. Munn v. Illinois, 94 U. S. 113; Chicago, B. & Q. R. Co. v. Iowa, Id. 155; Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. 702; People v. Budd, 117 N. Y. 1, 22 N. E. 682; Budd v. New York, 143 U. S. 517, 12 Sup. Ct. 468; Brass v. North Dakota, ex rel. Stoeser, 153 U. S. 391, 14 Sup. Ct. 857; Sinking-Fund Cases, 99 U. S. 700; Wabash, St. L. & P. Ry. Co. v. Illinois, 118 U. S. 557, 7 Sup. Ct. 4. The intervenor is interested in the matter in litigation and will gain or lose by the decision of the case within the technical rules of intervention. The strict rules of common-law or equity pleading should not apply. The proceeding is new to the jurisprudence of this country. The system of trying the question of what is a reasonable charge for transportation had its origin in the interstate commerce act, from which our railroad and warehouse commission act is taken almost verbatim. Therefore, for the construction to be placed on this act, and the rules of practice, we should look to the decisions of the interstate commerce commission. Before the interstate commerce commission any railroad company interested in the rate directly, as the Northern Pacific Railroad Company is interested, has always been allowed to intervene and be heard on the merits of the case. Eau Claire Board of Trade v. Chicago, M. & St. P. Ry., 5 Inters. Com. R. 264; Poughkeepsie Iron Co. v. New York, C. & H. R. R. R. Co., 4 Inters. Com. R. 195; Hamilton & Brown v. Chattanooga, R. & C. R. Co., Id. 686; McMillan v. Western Classification Committee, Id. 276; Chamber of Commerce v. Great Northern Ry. Co., 5 Inters. Com. R. 571. Hurlburt v. Lake Shore & M. S. Ry. Co., 2 Inters. Com. R. 122. The railroad commission, or this court, will not fix a rate which is reasonable between the termini of a road and by its order absolutely paralyze and crush the opposing line without giving it a chance to be heard. We do not say that the court must under all circumstances fix the rate so as to be profitable to the most expensive line, but that this is one of the ques-

tions properly to be considered. The public has an interest in maintaining rival lines. Other towns are served by the Northern Pacific which the Great Northern does not reach, and they are interested in the maintenance of the Northern Pacific. Complainant is the mere instrument for the trial of a public question. The complainant need not be a legal entity, but may be a mere agricultural society, or a board of trade, and have no interest in the litigation. Interstate Commerce Commission v. Detroit, G. H. & M. R. R. Co., 57 Fed. 1005. It is at least within the discretion of the commission or the court to allow a rival road carrying the same products from the same stations to be heard upon the fixing of such a public charge.

COLLINS, J. On proceedings had upon the complaint of Elias Steenerson the railroad and warehouse commission of this state made an order reducing the rates to be charged by the Great Northern Railway Company for carrying grain from Crookston to terminal points, and the company appealed to the district court for Ramsey county. Thereupon the Northern Pacific and two other railway companies made application to the court to file complaints in intervention. The first-named company, in the hands of receivers appointed by the federal courts in proceedings to foreclose certain mortgages, was allowed to file its complaint and to intervene. The applications of the other companies were denied. This appeal is from an order of the court overruling Steenerson's demurrer to the intervenor's complaint, and squarely raises the question of the right of a competing line of road to file a complaint in intervention, and of the commission or the court, on appeal, to allow intervention, at its discretion, and thus to put such road in position to take part in the trial, and, perhaps, control proceedings brought against another carrier to compel a reduction of rates for the carriage of passengers or freight, or to remedy some other matter within the purview of the law establishing the railroad and warehouse commission. And incidentally, but quite naturally, it opens up a field for inquiry and conjecture as to how far intervention by other railway companies which may be affected in a business way by a reduction of rates, one road after and through another, may logically be carried.

The legislation now under consideration is Laws 1887, c. 10, with the amendment, Laws 1891, c. 106, granting the right of an appeal

to the district court from orders made by the commission (see G.
S. 1894, §§ 379–400). The law of 1887 was modeled, unquestionably,
after the interstate commerce act (24 Stat. c. 104). The various sec-
tions of our chapter 10, by which a commission is created for the
purpose of trying issues raised by the public as to the reasonable-
ness of railway rates, fares, charges, and classifications, the manner
of proceeding, including the procedure in court for the enforcement
of such orders or reports as may be made by the commission, are
almost identical in language with the sections constituting the con-
gressional statute. But there has never been in the act last referred
to any provision for an appeal to a judicial tribunal from orders
made by the commission, as was the case under subdivision d of sec-
tion 15 of the state law, and also by the amendatory act of 1891,
which was, as we suppose, designed to supersede said subdivision.
In this respect these two laws are wholly different. Another dis-
tinctive feature of our statute, and to which we shall have occasion
to refer later on, is that part of subdivision f of section 1 of chapter
106 (G. S. 1894, § 386, subd. f), which declares that, after a tariff shall
have been fixed and published as prescribed in said section, it shall
be unlawful for the carrier to charge or maintain a higher or a lower
rate, fare, charge, or classification, except as decreed by a court.
The federal law contains no such emphatic provision.

It is enacted in section 2 of chapter 10 (G. S. 1894, § 380) that all
charges made by all common carriers who are subject to the pro-
visions of the law shall be equal and reasonable. Unequal and un-
reasonable charges are prohibited. The manifest purpose of this
statute was to prevent unjust discrimination between persons as
well as places in the matter of rates and charges, and at the same
time to regulate and control these rates and charges by compelling
reductions in case the commission should be of opinion that those
made and demanded were excessive and unreasonable. By the
amendatory statute of 1891 any railroad company or common carrier
affected by any order of the commission, except such as are purely
administrative, is given the right of appeal to the district court. It
is expressly provided that this right is in addition to all existing
legal and equitable remedies; and, where the cause is brought on
for trial in such court, all questions are to be tried de novo, full ju-
risdiction and power being granted and conferred in every respect.

The complaint in intervention made by the receivers of the Northern Pacific Railroad Company to which the demurrer was interposed set out, in addition to formal matters of no interest here, that the latter and the Great Northern road were and are competitors in business within the same territory in Minnesota and North Dakota, both lines of railway running into Crookston and other places in Minnesota, and from these easterly to the shipping terminals Duluth, Minneapolis, and St. Paul, the distance being substantially the same over either line; that the tariff of rates and charges for the carriage of grain and other freight from the various stations within this joint or mutual territory to the terminals has been the same on and over each line for some months, and that it is not excessive, unjust, or unreasonable in any respect; that it would be and is unjust and unreasonable to reduce the tariff of rates and charges over and upon the Great Northern as ordered by the commission; and that, if the order is affirmed by the court, the petitioner will be greatly damaged, and will lose a large amount of its freight shipments, unless it makes like reductions and adopts the same tariff. It is alleged that the tariff of rates and charges now in force is as low as it can be made and the earnings therefrom contribute a fair proportion towards the reasonable fixed charges of the petitioning company over and above its operating expenses. It is also alleged that by reason of a decrease in its business, and consequently in its revenues, within the past two years, the Northern Pacific Company found itself unable to meet the interest due upon its mortgage bonds; that this compelled foreclosure proceedings, and the appointment of receivers; but if the revenues of the road are still further decreased by reduction in its earnings, the result will be ruinous to it. There is no averment in the complaint in intervention that a just and reasonable tariff of rates and charges for the transportation of freight over the Great Northern line would not be equally as just and reasonable and equally as remunerative if adopted by the Northern Pacific. So that in fact the line of defense proposed by both railway companies is the same.

It is argued that by means of the allegations found in the complaint in intervention the Northern Pacific Company has brought itself directly within the spirit and the terms of the statutory enactment providing for and regulating the subject of intervention in this state.

G. S. 1894, § 5273. But it is obvious that this claim is not sustainable. To have the benefit of the statute, the interest of the petitioner must be in the matter in litigation in the suit as originally brought, and of such a direct, immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment rendered. It was so held in Bennett v. Whitcomb, 25 Minn. 148, and this statement of the law has frequently been approved in more recent cases. It is true that, according to the pleading demurred to, the Northern Pacific Company has a practical business interest in a controversy over the reasonableness of the rates and charges which are to be fixed by the commission or the court for the government of its competitor, the Great Northern, when transporting freight to terminals reached by both roads. And so has every other railway line within the state, for the rate and charge per pound for each mile must be fixed approximately, not mathematically, the same for every road, without regard to the direction they may run, and not particularly with reference to what terminals they may have. Of course, the interest which other roads may have is not as closely connected or as direct as that of the line which is competing for the same traffic, and must either lose it or, as a business proposition, reduce its rates and charges to correspond with the reduction made under the law, but still it exists in a lesser degree. The only interest which a rival company can have in an order made by the commission or by the court on appeal is indirect, arising wholly out of business relations, and these come through the proximity of the railway lines and natural competition. Such an order has no other or different effect upon a competing carrier than a voluntary scaling down of rates and charges by the company proceeded against would have. In either case the former can follow the latter by revising its tariff, or it can ignore the voluntary or involuntary reduction and maintain its old figures. The rules which govern all business where there is competition may oblige it to reduce its rates and charges, but as a matter of law it is not compelled to obey the order, and consequently such order has no application to or effect upon it in legal contemplation. The direct legal operation and effect of the order is restricted to and it rests solely upon the carrier made defendant in the proceedings. Under our construction of the stat-

ute, the respondent Northern Pacific Company had no right to intervene.

But it is urged that, even if the authority is not vested in the commission to permit intervention, the court, on appeal, has unlimited discretion and the broadest powers on this subject; that it is authorized to adopt its own methods of procedure, and to prosecute its inquiries as it deems needful to form a just judgment; and this is partly true. To establish the claim that the commission may permit interested parties to intervene, we are cited to the following cases determined by the interstate commission: Poughkeepsie Iron Co. v. New York C. & H. R. Ry. Co., 4 Inters. Com. R. 195; McMillan v. Western Classification Committee, Id. 276; Hamilton v. Chattanooga, R. & C. R. Co., Id. 686; Eau Claire Board of Trade v. Chicago, M. & St. P. Ry. Co., 5 Inters. Com. R. 264; Chamber of Commerce v. Great Northern Ry. Co., Id. 571. Of these cases the last two are the only ones which have a bearing on the question now before us, and in neither was the point made that the right of intervention, or the power of the commission to allow parties to intervene, did not exist. And on reading the cases just mentioned we discover that the controversies were not over the reasonableness of rates and charges for the carriage of freight, but related wholly to alleged unjust discriminations between places. The real issue could not be disposed of without bringing in other parties. Here no claim is made that there has been an unjust discrimination between places, but a different one,—that the Great Northern road is charging an excessive and unreasonable rate for transportation of grain over its line.

But in an earlier case,—Hurlburt v. Lake Shore & M. S. Ry. Co., 2 Inters. Com. R. 122, a proceeding to correct a classification of freight made by the initial carrier, which freight had to pass over the lines of several other carriers before reaching its destination,— it was held proper to make the other carriers parties, but that if they were not, the proceeding was not defective, and that an order for correction could be made effectual. In speaking of the interest which the subsequent carriers had in a proceeding against the first, Judge Cooley, who spoke for the commission, said: "The interest is so apparent that if any of such carriers had appeared and asked to

be heard when this case was presented the request would have been granted without hesitation. Nevertheless, the interest of such other carriers is indirect, and is in the question involved, rather than in the particular controversy; it is such an interest as in judicial proceedings would not make any one of them a necessary party to a suit. And to require all the parties governed by the official classification to be joined in this case would from the very number be to make the remedy of little or no value. But the law clearly, as we think, does not require it."

We do not think that any of the cases cited sustain the claim made for them by respondent's counsel, and it seems to us that much is said in the Hurlburt Case in opposition. But, in any event, it is to be remembered that proceedings under both statutes—federal and state—are special in their nature, not involving personal or property rights as they are involved in civil actions inter partes, but may be brought by any citizen in the interest of the public to prohibit a common carrier from making unreasonable or discriminating charges for the performance of a duty imposed on him by law. And, further than this, it is to be observed that neither of these commissions is a judicial body or tribunal in any sense. Their rulings cannot have, and are nowhere given, the force of judicial utterances. Their orders or reports are at most prima facie evidence in the courts of the matters therein stated, and no effort is made to enforce them except through the courts. The proceedings had to regulate rates and charges and to prevent discrimination never become judicial until they pass out of the control of the commission.

But the real question before the railroad and warehouse commission and that before the district court on appeal was the same, and it was a very simple one. It was whether the charges made by this defendant, a common carrier by rail, for the transportation of grain between certain points on its line of road, were reasonable, as they are required by law to be, every unreasonable charge for such service being prohibited and declared unlawful by subdivision a, § 2, of the state law. (G. S. 1894, § 380, subd. a.) If the charges made by this road were unreasonable, and hence prohibited, when all question of a competing line is excluded from consideration, can they be held to be reasonable because, when involuntarily imposed upon the competitor, they are unreasonable as to him? If the competing

line has heavier grades, or is longer, or by reason of natural disadvantages controls much less business than its rival, thus causing the actual cost of the service to be increased to it, or if it has been foolishly or expensively constructed, or if it is imprudently or recklessly managed, and through any of these things, for none of which the public is responsible, its fixed charges or its operating expenses are greatly increased, must the fact be considered when a reasonable rate or charge for the more fortunate carrier is fixed, and the errors in location or construction or management be fastened upon the public, who must pay the fixed rates and charges for transportation of passengers and freight, including, of course, such of the public as may have located along the line of road possessing natural as well as artificial advantages? In other words, must the debt or charges upon a road which have become fixed, incurred through an unjust and unreasonable plan or place of construction, or through its running expenses, resulting from imprudent and extravagant management, be taken as the basis for the imposition upon the patrons of two or more competing lines of what are actually unjust and unreasonable rates and charges for service upon all but one? That they must be is the inevitable logic of the argument made in behalf of the doctrine of intervention in cases like that at bar. It will, of course, be understood that we are not intimating that the line of road which asks to intervene here was built imprudently or extravagantly, so that its fixed debt and charges are more than those of the defendant road, or that it has at any time been managed in a careless or reckless manner. We have referred to such a road for the sole purpose of illustration. We think that the argument in favor of the right to intervene, or the power of the commission or the court to permit intervention, resolves itself into the proposition that when the commission, or the court on appeal, fixes what shall be a reasonable charge for one road, and it is a reasonable charge which is demanded by the law, it is not required to fix what will be a reasonable charge for that particular road, but for another. We cannot assent to this proposition as an exact statement of what the law demands. Such a rule is never considered or applied in any other kind of an enterprise.

Again, if we allow the doctrine of intervention once to gain a foothold in these proceedings, where would it end, and where could

the line of demarcation between railways be drawn? We have in this state many lines of road which reach and carry grain to the terminals mentioned in these proceedings. To be sure, but two, so far as we are advised, compete for the traffic in the territory now involved, but all are convergent. The line the most northerly of these has but one competitor in part of the territory it traverses, and that the road next to it on the south. But the one last mentioned must compete to some extent with its nearest neighbor southerly, and so on, one after another, until we reach our southern boundary. Now if, when fixing a freight tariff for the most northerly of these converging lines, a direct competitor, the road next on the south, may intervene, and have its needs and necessities considered, why should not the immediate competitor of the latter, the road next to it on the south, and the next, and the next, and so on to the end, also have intervention? Of course, the road mentioned as the third is not a direct business rival of the first, nor the fourth of either the first or the second, of these lines, but as the rates and charges are lowered, one after the other, from the north to the south, each and every of these railways is affected in its receipts and earnings. And why should not each be allowed to intervene for the same reason and on the precise principle advocated in support of the original claimant's right to take part in the controversy? It would be difficult to distinguish between the rights of these many roads, for ultimately all would be affected by the result of proceedings directed solely against one, just as all would finally be compelled to adopt a tariff of rates and charges voluntarily fixed by that same road.

And there is another very serious objection to permitting intervention. If a common carrier be allowed to intervene in proceedings to compel another to reduce its rates and charges, such intervenor becomes a defendant with all the rights that term implies. He is not controlled or bound by the wishes or acts of his codefendant in any way, but pursues his own course in the various steps of the proceedings. Let us suppose that the same rates and charges are fixed for both carriers by the commission, or by the district court, and are satisfactory to one but not to the other, and the latter chooses to appeal. Must the carrier who wishes to acquiesce and abide by the determination of the commission or the court as to what are reasonable rates and charges for services rendered by him also

appeal, in order to protect his rights in case the order is modified or reversed, or does he become an involuntary appellant when he has no grievance? If he has the right to abide by the decision, and conform to the new regulations, of what benefit is the right of appeal to the carrier who insists that the new tariff sheet is unjustly and unreasonably low? His appeal is of no practical benefit, for the laws of business will compel him to reduce his rates and charges so that he may share the traffic with his competitor, or be deprived of it. We might also consider what position would the carrier be in who had failed to appeal should the order be reversed altogether, or if it should be modified so as to increase or decrease the rates and charges to be collected by the appellant. But enough has been said to show what complications would arise if intervention were permitted, for that would confer upon the intervenor the right to step into the proceedings, and virtually control them. This cannot be allowed.

The court below seems to have thought that subdivision f of section 1 of the amendatory act of 1891 (G. S. 1894, § 386, subd. f) had some bearing on this question. We are of the opinion that the "no higher, no lower," feature of the subdivision is capable of but one construction. It was not the intention of the legislature to prohibit carriers from making reductions in tariffs at will, providing such reductions were uniform,—what are frequently called "horizontal reductions." This provision was designed, evidently, to thwart every attempt to evade the law or an order made under it by the raising of rates, fares, or charges or the changing of classifications at some stations on a line of road, or to the detriment of some persons, or, what would be the same thing in effect, by lowering or changing, either at other stations or for the benefit of other persons, after an order had been promulgated fixing rates and charges. The result of such raising or lowering would be to unjustly discriminate as between persons and places, and this the statute will not tolerate.

By subdivision d, § 3, of the amendatory act (G. S. 1894, § 393, subd. d), it is provided that "any" railroad or common carrier "affected" may appeal to the district court from orders made by the commission. If the quoted words are to be construed literally, the right of appeal is conferred upon roads and carriers without regard to whether or not they have become parties through intervention or

other proceedings. In fact, the claim is here made in behalf of the Northern Pacific that its right to appeal was not dependent on the result of its motion for intervention. It would require a very clear expression of the legislative intention for us to hold that a statute granted the right of appeal in these cases to any road or carrier not theretofore a party to the proceedings, but which might in a business way, and within the broad meaning of the word, be "affected" by an order fixing rates and charges. Persons and things are "affected," as the word is often used, by steps taken which act favorably or unfavorably upon them. As used in the law, the word must be construed rationally, and as having some legal signification. To give it the construction claimed by counsel would simply result in granting to every road in the state carrying grain to the terminals in question the right to become a party to these proceedings by merely appealing to the district court. It would be a novel situation of things to exclude all parties except the original defendant when the hearing is had before the commission, and then include all "affected," within the broadest meaning of the word, when the cause came on for hearing in the district court. The roads or carriers affected by an order of the commission are those upon whom it has a direct legal operation and effect, not those who may gain or lose only in a business way.

In deciding, as we do, that there can be no intervention in these cases, and that it is the carrier against whom the proceedings are had whose reasonable rates and charges are to be determined, we do not hold that the commission, or the district court on appeal, should adopt a narrow rule for the ascertainment of what are reasonable rates and charges for the defendant whose case is being inquired into. The investigation and inquiry should be conducted in a liberal spirit, and the rates, fares, charges, or classifications fixed after a careful and comprehensive examination of all the facts and circumstances surrounding the situation. It need not necessarily be confined to matters wholly pertaining to the road or carrier made such defendant, but the question to be disposed of should be considered with reference to the public, and the business interests involved, and among these interests may be the fact that there is a competition which should not be stifled. To allow competitors to become parties and to control these proceedings is to say that rail-

ways properly and carefully built and managed, and communities favorably located, shall be deprived of their natural advantages. And, upon the other hand, to ignore and wholly disregard the fact that there is a competing carrier, and his situation or condition, when fixing rates and charges, is to wholly destroy competition, and to drive him from the field. The commission, and, on appeal, the court, should be liberal in receiving evidence upon the question of what is a reasonable rate or charge to be made by the carrier proceeded against, and in their discretion may receive evidence and hear arguments from any person or corporation specially, although indirectly, interested in a determination of the question. But, as we have already decided, such person or corporation cannot be permitted, as a matter of right, to step into the case or proceed as a formal party thereto, and, in a measure, control it.

Order reversed.

MITCHELL, J. My objection to the opinion of the court is rather to the way in which the case is put than to the result reached. Briefly and generally stated, my views are these: I think it is inaccurate, as well as misleading, to liken these proceedings to an action inter partes. There is no litigation, and hence no subject of litigation, in the sense in which those terms are used in actions between parties. The rules as to parties, pleadings, and practice which obtain in such actions have no application to these proceedings, except as far as expressly so provided by the statute itself. In fact there are no parties to the proceedings, and no parties interested in the result in the sense in which those terms are understood in actions inter partes. These proceedings involve merely a public question, to wit, a public charge, in which every person, as a member of the public, and not otherwise, is more or less interested. The party making the complaint may not, and under the statute need not, have a dollar of direct and immediate interest in the question, but is merely the agent of the public to bring it before the commissioners. The question is essentially a legislative one, and I think the commissioners, or the court on appeal (which determines the question de novo in the same manner as the commissioners in the first instance), are wholly untrammeled by the rules of pleading, practice, evidence, or parties which obtain in judicial actions, and

have a right, in determining the question, to take into account any consideration which the legislature itself might legitimately take into account if it was fixing "railroad rates." The question is one of public policy, and not of private personal interest, and one which public interests require should be promptly decided, and the decision promptly executed. And whenever the scope of the investigation is limited or hampered by any of the technical rules of pleading, practice, or evidence which apply to litigation between individuals, the investigation becomes inadequate to the nature of the question, and the decision is deprived of much of its value to the public.

I have no doubt of the right of the commissioners, and, on appeal, of the courts, to allow any shipper or other individual or any carrier who has any special interest in the question to come before them, and produce any evidence or arguments which would aid in the determination of the question. How far they are legally required to hear evidence and arguments presented by others than the formal complainant and the particular railway company complained of is not involved here, but I do say that they would not be properly performing their whole duty in the premises if they refused to hear any material evidence offered by any person pecuniarily interested in either side of the question. While it is undoubtedly true that the financial necessities of the Northern Pacific Railroad Company is by no means decisive of what would be a reasonable rate to be charged by any other railway company, or even by the Northern Pacific Railroad Company itself, yet the fact that that road is a competitor of the Great Northern Railway Company, and that, as a business proposition, fixing rates for the latter will fix the rates for the former, is a consideration that the commissioners, or the court on appeal, should take into account, and is a good reason why they should allow the Northern Pacific Company to come before them, and present such arguments or evidence as they have to offer pertinent to the question.

As the rules of pleading or of "intervention" in actions have no application to these proceedings, the so-called "complaint in intervention" of the Northern Pacific Railroad Company, considered as a pleading, had, in my opinion, no proper place in the proceedings; but, considered merely as an argument or statement of the evidence

which that company proposed to offer, I do not think there would be anything improper in the commissioners or the court receiving it. If, however, the effect of it would be to put the Northern Pacific Railroad Company in the position of an "intervenor," so as to enable it to control the proceedings by appeal or otherwise, then I agree with the opinion of the court that it should have been stricken out, for I do not think the statute contemplates intervention in any such sense, or any right of appeal except by the railway company complained of. As long as the law allows an appeal at all from the determination of a public question of this character, it might seem anomalous that the right of appeal should be thus limited, but such, I think, is the plain meaning of the statute. The practice adopted in these proceedings only confirms me in the opinion that, both by professional training as well as because of the nature of their modes of procedure, the courts are not appropriate tribunals for the consideration of a question of this character. The tendency of the lawyer as well as the judge is to liken such proceedings to an action between parties, and to make them conform to the rules as to parties, pleading, and practice which obtain in such actions. For example, in this case counsel for the Northern Pacific Railroad Company themselves filed "a complaint in intervention." To this counsel for complainant Steenerson interposed a "demurrer," and the court made an order "overruling the demurrer,"—a form of procedure which, in my judgment, was wholly out of place in such proceedings. If I am correct in these views, it follows that it is of no practical importance whether the order of the court overruling the "demurrer" to the "intervenor's complaint" is affirmed or reversed. Treating that "complaint" as a mere argument or statement of the facts which the Northern Pacific Company has to advance or proposes to prove, it may be helpful to the court, and it can do no harm to allow it to stand. But, whether it is stricken out or allowed to remain, the court may, and ought, to hear any arguments or evidence which that company or any one else who is interested has to offer properly bearing upon the question under consideration.